[No. 7933-6-I. Division One. July 28, 1980.]

KATHLEEN E. KLINK, ET AL, *Respondents*, v. G. D. SEARLE & COMPANY, *Defendant*, ALVIN L. FIELDS, *Appellant*.

*Earle W. Zinn, John T. Petrie, Diamond & Sylvester, James W. Abbott,* and *Abbott, Curtis, Galvin & Sandell,* for appellant.

*Dwayne A. Richards, Laurie A. Kinerk,* and *Richards & Kinerk, P.S.* (*Bruce Rothman,* of counsel), for respondents.

James, A.C.J.—At jury trial of her complaint alleging medical malpractice, plaintiff, Kathleen E. Klink, received a verdict of $1.1 million against defendant, Alvin L. Fields. We affirm.

On August 31, 1975, Mrs. Klink suffered a massive bilateral stroke. At the time of the stroke, she was taking Ovulen–21, a birth control pill prescribed by defendant Dr. Fields. She had been taking the pill for approximately 17 months. She presented expert testimony that the stroke was caused by the birth control pill.

When Dr. Fields first prescribed the pill for Mrs. Klink, she was over 19 years of age and had never experienced a normal menstrual period. This symptom, primary amenorrhea, is a manifestation of a number of different underlying disorders. Expert testimony established that (1) the pill does not constitute a treatment of any of the underlying disease entities; (2) the standard of care in the medical profession requires a prompt diagnosis of the underlying disease; (3) the pill can be utilized as a diagnostic tool to establish whether the uterus can, in fact, bleed; and (4) when used in this manner, the pill should not be prescribed for a period in excess of 6 months.

Although he testified that he did inform Mrs. Klink of some alternative methods of birth control, Dr. Fields admitted that he did not inform her of any possible side effects from taking the birth control pill. He failed to inform her that because primary amenorrhea generally indicates infertility, the chances of her becoming pregnant were slight. He failed to inform her that the birth control pill he prescribed for her was not a treatment for the underlying cause of her primary amenorrhea. He failed to inform her that the longer the underlying cause of the primary amenorrhea remained undiagnosed and untreated, her chances of ever becoming pregnant were reduced. Mrs. Klink testified that she considered all of these factors

material, and that had she been informed she would not have consented to taking the birth control pills.

Dr. Fields first contends that the trial judge erred in refusing to grant his motion for dismissal at the close of all the evidence. He essentially argues, based on *Fritz v. Horsfall,* 24 Wn.2d 14, 163 P.2d 148 (1945), that because there is a split among medical authorities as to the cause and effect relationship between the birth control pill and strokes, Mrs. Klink failed to prove a prima facie case. We do not agree.

A challenge to the sufficiency of the evidence admits the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. A trial judge may grant the motion for dismissal only when there is no competent evidence or reasonable inference which would sustain a jury verdict in favor of the nonmoving party. *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 586 P.2d 845 (1978). Mrs. Klink presented expert testimony which, if believed by the jury, established the requisite causal relationship. Under *Fritz v. Horsfall,* however, the fact that a physician followed a course of treatment embraced by a minority of medical practitioners does not establish negligence. In this case, the expert's disagreement did not concern different courses of treatment. *Fritz v. Horsfall* is inapplicable. The trial judge properly denied Fields' motion.

Fields next contends that the trial judge erred in giving instruction No. 10.[1] This instruction, he argues, constituted a comment on the evidence. "To constitute a comment on the evidence, it must appear that the court's attitude toward the merits of the cause are [*sic*] reasonably

[1]Instruction No. 10 provided as follows: "When rendering services to a patient who has a recognized abnormal condition requiring diagnostic procedures, a doctor must complete the diagnosis if the recognized standard of practice requires it, and if it is necessary for the protection or best interests of the patient. If the doctor under those circumstances fails to perform the diagnostic procedures, he is liable if his failure to comply in anyway increases the risk of an occurrence and as a proximate result thereof the patient suffers injury."

inferable from the nature or manner of the court's statements." *State v. Carothers,* 84 Wn.2d 256, 267, 525 P.2d 731 (1974). Under this test, Dr. Fields' argument is without merit. No reasonable juror could have inferred the trial judge's attitude toward the merits of the case. The only "fact" assumed by the instruction was that Mrs. Klink had a recognized abnormal condition. This fact was undisputed.

Dr. Fields next contends that the trial judge erred in refusing to give his proposed instruction No. 7.[2] This instruction was warranted, he argues, because some of the medical testimony indicated that birth control pills could and should be used as a diagnostic tool to determine the underlying cause of the primary amenorrhea. We conclude, however, that the instruction was inappropriate because Dr. Fields presented no testimony that prescribing birth control pills for an extended period was recognized as a proper method of treatment. A review of the record, especially Dr. Fields' testimony, indicates that his purpose for prescribing the pill was primarily birth control. He testified that he regarded Mrs. Klink's breakthrough bleeding as a fortuitous side effect that would aid in diagnosing the underlying cause of her primary amenorrhea sometime in the future. No doctor testified that the pill was a recognized treatment for any of the underlying causes of primary amenorrhea. It would have been prejudicial error to instruct a jury on this issue because there was no substantial evidence concerning it. *Bean v. Stephens,* 13 Wn. App. 364, 534 P.2d 1047 (1975). The trial judge did not err in refusing Dr. Fields' instruction.

---

[2]Defendant's proposed instruction No. 7 provided: "You are instructed that a family practitioner is not bound to use any particular method of treatment if, among physicians of ordinary skill and learning, more than one method is recognized as proper, and it is not negligence for the physician to adopt any one of such methods. The testimony of other physicians that they would have employed a different method than that employed by the defendant Fields, or a disagreement of physicians of equal skill and learning as to the method which should have been employed, does not establish negligence."

Dr. Fields next contends that the trial judge made two erroneous evidentiary rulings. We do not agree.

He first attacks the trial judge's decision to allow testimony concerning post–1975 information on the cause and effect relationship between birth control pills and thromboembolic disorders. Dr. Fields argues that because his negligence was alleged to have occurred in 1974 and 1975, he could only be held to the standard of care in existence during that time period. Thus, he reasons, admission of any evidence concerning post–1975 information was prejudicial error.

We conclude that Dr. Fields did not properly preserve this issue for review. The cause and effect relationship between birth control pills and thromboembolic disorders was at issue in the trial. Unlike the standard of care issue, however, temporal factors play no part in analyzing the relevancy of evidence on the cause and effect issue. To preserve the error for appeal purposes, therefore, Dr. Fields was required to request a limiting instruction. "If evidence is admissible for a specific purpose, error cannot be assigned either to its admission or effect if no instruction limiting its purpose has been requested and actually proposed." *Lamborn v. Phillips Pac. Chem. Co.*, 89 Wn.2d 701, 707, 575 P.2d 215 (1978).

Dr. Fields' second assignment of evidentiary error concerns the admissibility of the results of a poll he conducted prior to trial.[3] Dr. Fields offered the results of the survey as an exhibit, stating, "[I]t is meant to disclose what the standard of care was." We conclude that the trial judge properly refused to admit the exhibit.

---

[3]Dr. Fields contacted the doctors who were on the active staff of Northwest Hospital in 1974. During his offer of proof, he testified:

> I obtained the phone numbers of each doctor, and I asked basically six questions. Number one, were they giving birth control pill prescriptions in 74? Number two, did they enumerate specific complications verbally? Did they enumerate specific complications written? Or did they give generalized warnings verbally or generalized verbal—warnings written? And lastly, did they obtain a signed consent for the birth control pills?

To make out a prima facie case based upon lack of informed consent, a plaintiff need not present expert testimony. *Miller v. Kennedy,* 11 Wn. App. 272, 522 P.2d 852 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975). *See also Hunter v. Brown,* 4 Wn. App. 899, 484 P.2d 1162 (1971), *aff'd,* 81 Wn.2d 465, 502 P.2d 1194 (1972). A physician is not necessarily precluded from establishing a medical standard of disclosure as a matter of defense. As we stated in *Hunter* at page 906:

> Reasons why the physician withheld facts are a matter of defense. Evidence that the patient was not uninformed or that the facts undisclosed were immaterial or that disclosure might be harmful would properly be matters of defense. It is at this juncture that evidence of medical standards of disclosure might become relevant and material.

*See also Holt v. Nelson,* 11 Wn. App. 230, 240–41, 523 P.2d 211, 69 A.L.R.3d 1235 (1974) (enumerating exceptions to the requirement of full disclosure). If a defendant doctor attempts to introduce evidence concerning the standards of disclosure, the standards must tend to establish an available defense. An examination of the questions Dr. Fields used in his survey indicates that he merely intended to provide evidence of what other doctors told their patients. The results of the survey, therefore, bore no relationship to any exception from the rule of full disclosure. The exhibit was inadmissible.

Dr. Fields' final contention attacks the size of the jury's damage award. He urges that the award of $1.1 million is so excessive "as to unmistakably indicate that the verdict must have been the result of passion or prejudice, . . ." We do not agree.

Initially, we note that the trial judge denied Dr. Fields' motion for a new trial on this ground. Our State Supreme Court in *Sherman v. Seattle,* 57 Wn.2d 233, 356 P.2d 316 (1960), indicated that "'*[t]he trial judge's denial of a motion for a new trial is to be weighed in determining whether the judgment is excessive.*'" *Sherman,* at 247,

quoting *Huggans v. Southern Pac. Co.*, 92 Cal. App. 2d 599, 207 P.2d 864 (1949). Here, the trial judge heard all of the testimony and stated:

> [T]he court cannot find, after diligent review, that any of the grounds that have been argued under Civil Rule 59 does exist to either grant a new trial or to tamper with the jury's verdict.
>
> I think to do so would simply substitute the Court's appraisal of this complex case with that of the jury, and that would be impermissible in my opinion. It was a substantial verdict. There is no question about it, but I think it was in the realm of the evidence adduced, and the jury, in its infinite wisdom, has the right to make this type of finding.

We agree with the trial judge's observation. Although the size of the award is large, we may not properly substitute our judgment for that of the jury's.

Plaintiffs Klinks' motion to dismiss and impose sanctions for pursuing a frivolous appeal is denied.

Affirmed.

DORE and DURHAM–DIVELBISS, JJ., concur.