[No. 48203-9. En Banc. February 17, 1983.]

RICHARD D. PEREZ, ET AL, *Appellants,* v. JOHN D. PAPPAS, ET AL, *Respondents.*

*Carney, Stephenson, Badley, Smith & Mueller,* by *Basil L. Badley* and *Timothy J. Parker,* for appellants.

*Cogdill, Deno & Millikan,* by *James E. Deno,* for respondents.

DIMMICK, J.—This is an action brought by appellants, Richard Perez and his wife Charlotte, against respondent, John Pappas, an attorney who had represented them in a personal injury suit. Appellants seek recovery, for breach of fiduciary duty, of all or a portion of the fee respondent received. The trial court acknowledged said breach but held it had been cured by repayment of funds prior to trial. We affirm the trial court but on an alternative theory of accord and satisfaction.

Appellant Richard Perez was seriously injured in 1975 while banding a flatbed load of steel pipe using a ratchet manufactured by Signode Corporation. He is now a paraplegic due to those injuries. Very shortly after the accident Mrs. Perez engaged attorney Malcolm McLeod to represent the couple in an action against Signode. A contingent fee agreement was entered into but Mr. McLeod did very little work as the relationship with appellants deteriorated and was terminated within a few weeks. Appellants then hired the law firm of Schroeter, Goldmark and Bender to represent them and a contingent fee agreement was entered into. Appellants became dissatisfied because the firm allegedly did not keep them well enough informed and made too

many decisions regarding the case without their approval. There also was friction regarding Mr. Perez' decision to become an unpaid Jehovah's Witness minister rather than seeking retraining and paid work. The Schroeter firm represented appellants for a period of nearly 2 years and their records indicated that they had worked approximately 115 hours on the case.

In the fall of 1978 appellants and respondent agreed that respondent would be substituted as appellants' attorney. Respondent presented a contingent fee agreement to appellants but Mr. Perez disapproved of several provisions. Accordingly, no written agreement was reached but the parties orally agreed to a 35 percent contingent fee.

The success of the case was questionable as appellant's fellow employees had disposed of the Signode ratchet shortly after the accident, the manufacturer of the banding material was unknown, and appellant had been misusing the tool by employing a "cheater" bar to gain extra leverage which may have contributed to or caused the accident. Additionally, Mr. Perez' decision not to seek paid employment posed problems in proving damages. In spite of these facts, and within a matter of months from the time Pappas took the case, Signode's insurers began making settlement offers, apparently as a result of depositions taken by respondent in Chicago.

A favorable structured settlement offer was finally accepted in January 1979. The settlement had the following components:

1. $360,000 in cash;
2. life insurance benefit of $100,000;
3. $25,000 yearly lifetime annuity for 10 years certain;
4. $5,000 to be paid annually on the 18th, 19th, 20th and 21st birthdays of each of the six Perez children (for a total of $120,000); and
5. payment in satisfaction of the $71,000 medical lien held by Sea–Land (which had already been settled by the insurance company for $35,000).

James Pappas, respondent's brother and an economist,

calculated the present cash value of the various components for respondent for the purpose of determining the proper value of the total settlement. There is a conflict in testimony as to whether respondent informed appellants of the present cash value; however, the court found that respondent did discuss the information with appellants. Respondent admits that he never submitted to appellants a full accounting which included the settlement reduced to a present cash value figure.

The parties agreed that Pappas would take $350,000 cash payment, rather than the 35 percent originally agreed upon as a fee and would pay all fees due McLeod and the Schroeter law firm from the $350,000. Respondent testified at trial that he took $350,000 and did not compute the 35 percent figure because he was assuming the risk of paying a greater amount to the other attorneys than expected and because of tax consequences to himself. Mr. Perez testified that he believed respondent took $350,000 because it reflected 35 percent of the settlement. He testified he was thus led to believe the settlement was worth $1 million.

Approximately 6 months after the settlement, appellants were referred to economist Dr. Silberberg by an attorney. Dr. Silberberg calculated the present cash value of the settlement from figures supplied by appellants. The calculations of Silberberg and the accounting later submitted by respondent indicated that respondent's fee substantially exceeded 35 percent of the actual present cash value of the settlement. Appellants complained to respondent regarding the fee. Respondent thereupon suggested that his brother, the other economist in this matter, discuss the present dollar value of the settlement with Silberberg. He would then repay appellants any money he had received exceeding 35 percent of that agreed upon value. After some compromises, both economists agreed on a dollar value for the settlement, and calculations revealed that respondent owed appellants $37,500, which he agreed to pay, plus interest. Pappas testified that he specifically told Mr. Perez, "I want you to be satisfied, and is this something that is going to

satisfy you in your position and condition?" and that Mr. Perez answered "yes" to the question. Mr. Perez testified he was never happy with the fee. However, he did accept the money. Unfortunately, no written document was entered into reflecting the parties' agreement. The trial judge, who had the witnesses before him, made a specific finding that Mr. Perez' testimony was not credible. Thus, we accept as the true rendition of the facts Pappas' testimony that Mr. Perez was satisfied at the time of the agreement.

After consulting new legal counsel, appellants filed a complaint praying in the alternative for complete forfeiture of the attorney fee received by respondent, repayment of the fees less those based on quantum meruit, or repayment of a dollar amount that would allow appellants to recover what they were promised, 65 percent of $1 million.

The trial court found that the parties had orally agreed to a 35 percent contingent fee and concluded:

> The defendant John Pappas did breach his fiduciary duty with regard to his dealings with the plaintiff Richard Perez in failing to render a prompt accounting and re-negotiating his fee upward at the time of the settlement of the Signode action, which breach was cured by the subsequent agreement and payment of $37,500 plus interest.

The trial judge specifically rejected the theory that the payment of $37,500 represented an accord and satisfaction because there was no dispute as to what the fee should be but only a dispute as to the cash value of the settlement. Appellants appealed. Respondent did not appeal the conclusion that he breached his fiduciary duties.

■ We affirm the result reached by the trial court, but do so on different grounds. We hold that although respondent did a commendable job in negotiating a settlement for appellants, he did in fact breach his fiduciary duties in renegotiating the fee for his services without full disclosure and in failing to give a written accounting. We disagree with the trial court that a breach of fiduciary duty can be

"cured." It is well settled that restitution is no defense to an attorney's violation of the Code of Professional Responsibility, *In re Pennington,* 73 Wn.2d 601, 440 P.2d 175 (1968), and this appears to us to be an analogous situation. However, this is not an attorney discipline case and we can see no legal or public policy reasons which prevent an attorney and client from availing themselves of the contract remedy of accord and satisfaction. There was a genuine dispute in the instant case as to the fees and the basis of calculating those fees. We hold that the parties resolved the dispute regarding the fees to which respondent was entitled by agreement. Therefore respondent's repayment of $37,500 constituted an effective accord and satisfaction.

I

Oftentimes, structured settlements do not readily lend themselves to the usual course of calculating fees pursuant to contingent fee agreements. Therefore, when a structured settlement is reached the attorney and client may have to reconsider and discuss the calculation of fees.[1] However, in doing so an attorney must continually be aware that the

---

[1]Testimony indicated that the accepted practice with regard to a structured settlement and contingent fee agreement is to apply the agreed upon percentage to the present value of the settlement. Other methods also exist. *See, e.g.,* Choulos, *Structured Settlements: Cure or Curse?,* Trial, Nov. 1980, at 73; Krause, *Structured Settlements for Tort Victims,* 66 A.B.A. J. 1527 (1980); Mangelsdorf, *Structured Settlements in Review: The Fundamental Concept,* 4 Am. J. of Trial Advoc. 559, 563–64 (1981); Martin, *Structured Settlements: Protecting the Plaintiff,* Trial, Feb. 1982, at 50.

Of course, in any fee negotiation between an attorney and client CPR EC 2–19 must be kept in mind. That ethical consideration provides:

As soon as feasible after a lawyer has been employed, it is desirable that he reach a clear agreement with his client as to the basis of the fee charges to be made. Such a course will not only prevent later misunderstanding but will also work for good relations between the lawyer and the client. It is usually beneficial to reduce to writing the understanding of the parties regarding the fee, particularly when it is contingent. A lawyer should be mindful that many persons who desire to employ him may have had little or no experience with fee charges of lawyers, and for this reason he should explain fully to such persons the reasons for the particular fee arrangement he proposes.

The instant case is a good example of the usefulness of fully discussing fees and reducing any agreement to writing.

attorney–client relationship is a fiduciary one as a matter of law and thus the attorney owes the highest duty to the client. *See Liebergesell v. Evans,* 93 Wn.2d 881, 890, 613 P.2d 1170 (1980); *McCutcheon v. Brownfield,* 2 Wn. App. 348, 356–57, 467 P.2d 868 (1970). We agree with a well recognized principle that:

> Once the attorney–client relationship is established, any modification of the fee arrangement becomes subject to the fiduciary obligations and the well–established presumptions. The courts have generally given particular attention and scrutiny to fee contracts made or altered during the attorney–client relationship.

(Footnote omitted.) R. Mallen & V. Levit, *Legal Malpractice* § 132, at 235 (2d ed. 1981). Additionally, if the renegotiation results in greater compensation than counsel was entitled to under the original agreement, courts may refuse to enforce the renegotiation unless it is supported by new consideration. 7 Am. Jur. 2d *Attorneys at Law* § 251 (1980).

Accordingly, respondent's renegotiation of his fee after settlement must be carefully scrutinized. The trial court specifically found that respondent renegotiated his fee upward at the time of settlement resulting in an increased fee. The court then concluded that due to this renegotiation and respondent's failure to give a prompt accounting, respondent had breached his fiduciary duties. Respondent did not cross–appeal challenging this finding of fact or the conclusion of law. Nevertheless, for future guidance we examine the respondent's primary contention at trial. He maintained the fee was renegotiated upward because he was assuming several additional risks justifying the increased fee and thus there was no breach of fiduciary duties. Respondent asserted that he agreed to become obligated to pay the fees to the other attorneys, McLeod and the Schroeter, Goldmark and Bender law firm, and those fees were unsettled at the time of the fee renegotiation. Such contingencies were illusory, however. Respondent knew exactly the number of hours the other attorneys had

worked on the case, their normal hourly charge and the work they actually had completed. When respondent took the case no substantial progress had been made and as a matter of fact it was respondent alone who did the majority of the discovery which precipitated the negotiated settlement.

Prior to settlement respondent had reached a tentative agreement with the Schroeter firm regarding the fee owed them. The amount agreed to was $11,520 reflecting a charge of $100 per hour for approximately 115 hours which the firm worked on the case. Due to some complications, however, the Schroeter firm did not agree to the amount and was not paid prior to the fee renegotiation. The final agreement with the Schroeter firm, however, was reached the day after appellants signed the settlement agreement with Signode's insurers and it reflected the exact amount of the prior tentative agreement, $11,520. In fact, it was the appellants who paid the Schroeter firm and respondent subsequently reimbursed them when he received his fee of $350,000. The claim by McLeod was settled by a trial judge 4 or 5 days thereafter for $100. The trial court specifically found in the instant case:

> At the time of the settlement of the Perez v. Signode case, when the proceeds were disbursed to Mr. Perez and Mr. Pappas, John Pappas knew the prior law firms' claims had been resolved by agreement and court order. The amount of costs advanced by Mr. Pappas were also known at that time. After the ultimate settlement of prior attorney fee claims, this agreement resulted in defendant receiving more than thirty-five percent of the present cash value of the settlement.

Additionally, there was no contingency due to the medical lien filed by Sea–Land. The insurance company had settled the claim of $71,000 for $35,000 prior to the settlement being accepted by appellant.

Since close scrutiny reveals that all the contingencies cited by respondent as justifications for renegotiating his fee upward were essentially nonexistent, we agree with the trial court's conclusion that a breach of fiduciary duty

occurred.

Appellants request that we set forth definite guidelines to be utilized by attorneys in valuing structured settlements for the purpose of attorney fees in order to foreclose future problems similar to those encountered here. For example, appellants ask that we select a specific discount rate to be used in calculating the present value of a settlement. The appropriate discount rate constantly changes based on a variety of figures best understood by economists and is not an appropriate item for this court to now strictly define. The Code of Professional Responsibility sets forth helpful guidelines in negotiating attorney fees and these should be followed.

## II

Appellants contend that respondent's breach must result in complete forfeiture of fees pursuant to *Mersky v. Multiple Listing Bur. of Olympia, Inc.,* 73 Wn.2d 225, 437 P.2d 897 (1968). Alternatively, appellants cite *Dailey v. Testone,* 72 Wn.2d 662, 435 P.2d 24 (1967) for the proposition that due to his breach respondent should only receive fees based on quantum meruit. These principles may be sound in the appropriate case. However, we do not agree with their application here since we hold that respondent's repayment of $37,500 plus interest and appellant's acceptance of that sum constituted an accord and satisfaction and discharged respondent's obligation.

The concept of accord and satisfaction is based upon the law of contract. *Dodd v. Polack,* 63 Wn.2d 828, 830, 389 P.2d 289 (1964), and cases cited. Simply stated, as applicable here, an accord and satisfaction consists of a bona fide dispute, an agreement to settle that dispute, and performance of that agreement. *Eagle Ins. Co. v. Albright,* 3 Wn. App. 256, 474 P.2d 920, *review denied,* 78 Wn.2d 996 (1970), and cases cited. The new contract must rest upon consideration and such consideration exists when there is a dispute and the agreement compromises the parties' differences. *Plymouth Rubber Co. v. West Coast Rubber Co.,* 131

Wash. 662, 231 P. 25 (1924).

The parties disagreed as to the amount, if any, respondent had been paid over and above 35 percent of the settlement. The dispute rested upon the valuation of the settlement which was the very basis of the dispute over the fee. Both economists compromised in reaching a mutually agreeable figure and, according to the testimony, appellants were satisfied with that agreement at the time respondent paid the money and appellants accepted it. In fact it was not until 5 months later that they wrote respondent that they were dissatisfied with the amount and wanted more.

Appellants argue that there can never be an accord and satisfaction between a fiduciary and principal, citing *Gleason v. Metropolitan Mortgage Co.,* 15 Wn. App. 481, 551 P.2d 147 (1976). The court in *Gleason,* at page 498, merely held that "[i]n the absence of an express agreement, made upon full revelation, no accord and satisfaction will arise in such a case [involving a fiduciary relationship]." According to the testimony of respondent, found by the trial court to be credible and the true rendition of the events, there was an express agreement made upon full revelation.

The record before us establishes all the elements of accord and satisfaction.

## III

Appellants contended at trial that respondent represented to them that the value of the settlement was $1 million and they should get the benefit of that bargain, 65 percent of $1 million. Appellants reassert this contention on appeal. The trial court specifically found that respondent never represented to appellants that the settlement had a value of $1 million. This finding is supported by substantial evidence and thus we sustain it and reject appellants' contention. *St. Regis Paper Co. v. Wicklund,* 93 Wn.2d 497, 503, 610 P.2d 903 (1980).

## IV

Appellants finally contend that they should recover

attorney fees even though they did not prevail at trial. They assert that a defendant is always liable for attorney fees when a lawsuit results from the defendant's breach of fiduciary duties. They cite the following language in *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 801, 557 P.2d 342 (1976) as support for that proposition:

> Petitioner necessarily instituted this lawsuit to compel respondent to carry out his fiduciary duties as manager of the partnership. The lawsuit preserved the partnership assets and prevented respondent from further commingling the partnership with his separate assets.
>
> A partner should share the expense of a lawsuit when he breaches his fiduciary duty to the other partners. . . . Respondent could have performed his management duties and charged the partnership for any expenses he incurred. This action merely performed respondent's duties . . .

We disagree with appellants' interpretation of this language. As stated in *Asarco Inc. v. Air Quality Coalition,* 92 Wn.2d 685, 716, 601 P.2d 501 (1979), the "actual award [in *Hsu Ying Li*] stemmed from the prevailing party's having preserved partnership assets, *i.e.,* an identifiable fund." No similar considerations are present in the instant action.

Respondent breached his fiduciary duties by renegotiating his fee upward at time of settlement and failing to account. His repayment of $37,500 and appellants' acceptance of that amount before trial constituted an accord and satisfaction. The trial court's refusal to award attorney fees was proper. Accordingly, we affirm.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and PEARSON, JJ., and CUNNINGHAM and MORGAN, JJ. Pro Tem., concur.