Raymond A. SHAW and Karen L. Shaw, husband and wife, individually, and as Guardians Ad Litem of Richard Scott Shaw, a minor, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 83-3759.

United States Court of Appeals, Ninth Circuit.

Argued & Submitted June 6, 1984.

Decided Aug. 31, 1984.

1982 revocation hearing constituted prejudicial delay.

Richard J. Kelley, Tenino, Wash., for defendant-appellants.

Eloise E. Davis, Dept. of Justice, Washington, D.C., for plaintiffs-appellants.

Before ANDERSON, POOLE and NELSON, Circuit Judges.

NELSON, Circuit Judge:

The United States appeals the damages component of a judgment under the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2674 ("FTCA"). We reverse and remand.

FACTS AND PROCEDURAL BACKGROUND:

Karen Shaw gave birth to Richard Scott Shaw ("Scotty") at the Madigan Army Medical Center in Tacoma, Washington on July 4, 1979. The baby suffered severe brain damage during delivery. On March 1, 1982, Mr. and Mrs. Shaw ("the Shaws") filed suit against the United States under the FTCA in their own behalf, and as guardians ad litem for Scotty. The action was tried to the district court without a jury as required by 28 U.S.C. § 2402. The court found that Scotty's injuries, which include spastic quadraparesis, blindness, a seizure disorder, and profound mental and physical retardation, were caused by the negligence of the hospital medical staff. On appeal, the United States has conceded liability.

The district court awarded damages of $11,732,345.43. First, the court found that Scotty was entitled to pecuniary damages—for future medical expenses, full-time attendant care, and lost earnings—of $4,780,147. It calculated the discount rate [1] as follows:

---

1. Discounting means making adequate allowance for the earning power of money. An

"17. Special damages received by the guardian for the minor plaintiff shall be reduced to present value by 1% (9% interest minus 8% inflation = 1%)."

The court then applied this rate by deducting 1%, or $47,801.47, from total pecuniary damages. The government contends that both the selection of the discount rate and its application were erroneous.

Second, the court awarded Scotty non-pecuniary damages of $5 million for mental anguish, pain and suffering, and destruction of his ability to enjoy life. Third, the court granted the Shaws $2 million for the loss of love and companionship of their child, and injury to the parent-child relationship. The government challenges the amounts of these last two awards.

STANDARD OF REVIEW:

■ In FTCA cases the clearly erroneous standard governs our review of factual determinations, including damages. *Felder v. United States*, 543 F.2d 657, 664 (9th Cir.1976); Fed.R.Civ.P. 52(a). Although that standard contemplates deference to the trial judge's opportunity to see and hear the witnesses, our review is not restrained by the statutory and constitutional limitations applicable to our review of a jury's verdict. We judge a trial court's finding to be clearly erroneous when, after reviewing the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

DISCUSSION:

■ The components and measure of damages in FTCA claims are taken from the state where the tort occurred, which in this case is Washington. *DeLucca v. Unit-*

ed States, 670 F.2d 843, 844 (9th Cir.1982); *see* 28 U.S.C. § 1346(b). The FTCA also provides, however, that the United States "shall not be liable ... for punitive damages." 28 U.S.C. § 2674. The Act does not specify whether federal or state standards determine which damages are punitive and which are compensatory. In *United States v. English*, 521 F.2d 63, 70 (9th Cir.1975), we stated that "[i]f the local law provides for punitive damages, or permits application of standards which result in plaintiffs getting more than compensatory damages, only compensatory damages may be awarded." The government concedes that Washington law does not provide for punitive damages except where expressly authorized by statute. *See Barr v. Interbay Citizens Bank*, 96 Wash.2d 692, 697, 635 P.2d 441, 443 (1981), *amended in* 649 P.2d 827 (1982). Instead, it argues that the district court applied state law in a punitive manner by (1) failing to discount properly the pecuniary award to Scotty, and (2) awarding excessive non-pecuniary damages to Scotty and his parents.

*I. The Pecuniary Award to Scotty*

■ Our cases have established basic steps for calculating pecuniary damages under the FTCA: (1) compute the value of the plaintiff's loss according to state law; (2) deduct federal and state taxes from the portion for lost earnings; and (3) discount the total award to present value. *See De-Lucca*, 670 F.2d at 844; *English*, 521 F.2d at 76.

■ The propriety of the district court's first computation is not at issue. A tort plaintiff in Washington may recover future earnings and medical expenses as components of a pecuniary award. *See, e.g., Herskovits v. Group Health Co-op*, 99

award for pecuniary damages, such as the lost earnings and medical expenses in this case, could in theory take the form of annual installments, but generally is paid to the plaintiff as a lump sum. The lump sum, however, cannot be computed simply by adding up the periodic payments. Because the money can be invested to earn additional money, the ascertained future benefits must be discounted to their present

value. *See Jones & Laughlin Steel Corp. v. Pfeiffer*, 462 U.S. 523, 103 S.Ct. 2541, 2550, 76 L.Ed.2d 768 (1983). The discount rate is based upon the return available on the best and safest investments, since the plaintiff is entitled to a risk-free stream of income. The court then applies the rate to each of the installments before adding them up to determine the total award.

Wash.2d 609, 664 P.2d 474, 479 (1983). We have never held, and the government does not argue, that these categories of damages are punitive as a matter of federal policy. *See English,* 521 F.2d at 70. Nor is the amount of the award, as the government concedes, unsupported by the evidence. *Id.* Scotty will never be able to work, and will always require special equipment, medication, and therapy. Nevertheless, we cannot affirm this part of the judgment, because the district court did not consider the effect of taxes or properly discount these damages.

### A. *Deduction of Income Taxes*

The district court found that a normal, healthy individual with a high school education could expect to work 40.2 years and earn $961,687 in wages and fringe benefits. The Supreme Court of Washington has held that no deduction for income taxes need be made from such an award except where "extremely high income is involved." *See Hinzman v. Palmanteer,* 81 Wash.2d 327, 334, 501 P.2d 1228, 1233 (1972). There was no proof of high prospective income in the instant case, and the district court made no findings with respect to taxes.

However, in *Felder, supra,* we held that, as a matter of federal law, income taxes should be deducted from an FTCA award for lost compensation. A failure to do so will result in the imposition of punitive damages against the government, even if the state has decided not to require deduction in suits between private parties. *Id.* We reasoned that:

> The effect is especially punitive where, as under the Act, the federal government is the defendant. By its tortious activity the Government loses the income taxes the decedents would have paid over the years. If the Government were nevertheless required to pay the survivors an

amount estimated to equal those lost taxes, it would be doubly sanctioned. *Id.* at 670 n. 17.[2]

The United States has not requested reduction of Scotty's pecuniary award on this ground, although it has called the district court's omission to our attention. The government believes the error does not merit reversal because the taxes Scotty will pay on the investment earnings from his discounted award may offset the taxes which the court should have deducted immediately.

■ We have indeed noted that, since income taxes on lost compensation should be deducted, a lump sum damage award should correspondingly be increased by the amount of income tax that would have to be paid on the earnings of the total award. *See DeLucca,* 670 F.2d at 845. Otherwise, when the court discounts the award to its present value, the plaintiff would be penalized. Because of taxes, he would not receive a portion of the income which is imputed to him from investing the proceeds of his award. *Id.* at 845–46. Inflating the lump sum award to compensate for this effect is, therefore, a necessary analogue to the deduction from lost earnings mandated by *Felder. See Sauers v. Alaska Barge,* 600 F.2d 238, 247 (9th Cir.1979).

■ But the district court may not assume that the failure to deduct taxes on lost compensation will offset the taxes on the income generated by the lump sum award unless two conditions are met. *Id.* First, the state whose law otherwise applies must also have adopted the offset approach. *See Hollinger v. United States,* 651 F.2d 636, 641–42 (9th Cir.1981). Second, the district court must be unable to arrive at its own reliable estimates of future inflation and interest rates from the testimony of expert witnesses. *Id.*

■ In this case, however, the offset approach was not available because Wash-

---

**2.** At least one court of appeals has both declined to follow *Felder* and questioned the wisdom of adopting such a rule in the context of a statute referring us to state law. *See Kalavity v. United*

*States,* 584 F.2d 809, 813 (6th Cir.1978). While we may share that concern, *Felder* binds us as the law of this circuit.

ington courts do not use it. Nor do we believe that trial courts may simply ignore these calculations as speculative—"so are most predictions courts make about future incomes and expenses." *English*, 521 F.2d at 75. Where the award is large, the possible adjustments involved in taking taxes into account are significant. *See Hollinger*, 651 F.2d at 642. We therefore remand to the district judge to adjust the lost earnings award and the total pecuniary damages for income taxes.

### B. *Discounting to Present Value*

In *English, supra,* this court reversed a portion of an FTCA award on the ground that the district court had failed to discount a deceased's projected earnings to present value. *See* 521 F.2d at 72. We found that the failure to discount gave the widow more money than she could have expected from her spouse's future earnings had the accident not occurred. *Id.* at 76. *English* did not specify, however, whether discounting was required as a matter of state law or supervening federal policy. We noted that California law, which applied in other respects, considers the effect of inflation and interest rates on damage awards, but we also mentioned two other policy concerns which influenced our decision. *Id.* at 74–75. Recently we resolved this question, stating that in *English* "we were applying the law of California." *Hollinger*, 651 F.2d at 641–42.

 The Supreme Court of Washington has held that in that state an award for pecuniary damages should be "discounted to present worth." [3] *Hinzman*, 501 P.2d at 1234, *citing Warner v. McCaughan*, 77 Wash.2d 178, 460 P.2d 272 (1969).

We have referred to at least three acceptable methods for determining the appropriate discount rate. The first, the "independent incorporation" method, requires inflation of the entire lump sum award by the compounded rate of inflation, and then application of the discount rate to the inflated sum. *See Hollinger*, 651 F.2d at 642. The second approach, the "offset" method, requires that the inflation rate be subtracted from the discount rate, to achieve the "real" interest rate, which is then applied to the lump sum. *See Alma v. Manufacturer's Hanover Trust Co.*, 684 F.2d 622, 626 n. 2 (9th Cir.1982). The third technique involves application of a set formula which assumes a constant relationship between the two rates. *Id.* All three methods require independent and adequate proof of each factor before the inflation and discount rates can be compared. *Id.* at 626–27. The choice among the methods is left to the trial judge, who must explain the approach he adopted. *See Jones & Laughlin Steel Corp. v. Pfeiffer*, 462 U.S. 523, 103 S.Ct. 2541, 2556, 76 L.Ed.2d 768 (1983). Once he chooses a rate, he should apply it to *each* of the estimated annual installments, and then add up the discounted installments to compute the award. *Id.* 103 S.Ct. at 2551.

 Based on these standards, the district court here erred in at least three respects. First, it omitted to indicate its choice among the approved approaches for discounting awards. Second, it offered no explanation of its estimates of future inflation and interest rates. Third, once the court arrived at a 1% discount rate, it simply deducted 1% from the *total* pecuniary damages, instead of making deductions

---

**3.** WPI 34.02, 6 Wash.Prac. 182 (1967):

DAMAGES ARISING IN THE FUTURE—DISCOUNT TO PRESENT CASH VALUE

" 'Present cash value' as used in these instructions means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of the loss at the time in the future when [the expenses must be paid] [or] [the earnings would have been received] [or] [the benefits would have been received.]

"The rate of interest to be applied by you in making this determination should be that rate which in your judgment is reasonable under all the circumstances taking into consideration the prevailing rates of interest in the area which can reasonably be expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, can make in this locality.

"[Damages for [pain and suffering] [disability] [and] [disfigurement] are not reduced to present cash value.]"

from each annual installment.[4] In light of these mistakes, we are required to remand the pecuniary award for subsidiary findings and recomputation.[5]

## II. The Non-Pecuniary Awards to Scotty and the Shaws

### A. The Award to Scotty

■ The district court awarded non-pecuniary damages of $5 million. Washington law entitles a plaintiff to damages for pain and suffering, mental anguish, and loss of capacity to lead a normal life, and characterizes such awards as compensatory. See, e.g., Parris v. Johnson, 3 Wash. App. 853, 860 n. 2, 479 P.2d 91, 95 n. 2 (1970). The government contends, however, that these damages are punitive because Scotty's injuries are adequately compensated by the large pecuniary award.

The principal case which supports this view is Flannery for Flannery v. United States, 718 F.2d 108 (4th Cir.1983), cert. denied, —— U.S. ——, 104 S.Ct. 2679, 81 L.Ed.2d 874 (1984). There a district judge, relying on West Virginia law, ordered the United States to pay plaintiff $1.3 million for loss of capacity to enjoy life. The court of appeals reversed, notwithstanding the state supreme court's characterization of such damages as compensatory. The court held that, as a matter of federal law, an award is punitive to the extent a claimant receives more than his "actual loss." 718 F.2d at 111. Since this particular plaintiff was comatose, and therefore unaware of his diminished capacity, the additional money could not compensate him. Id.

The Ninth Circuit has squarely rejected this analysis, however. In Felder, supra, we recognized that such an expansive view of federal law would "impinge seriously upon the architecture of the Act which provides for recovery according to the lex loci delictus." 543 F.2d at 675. The unique position of the United States as both defendant and tax-collector justified a rule requiring deduction of taxes from awards for lost compensation. But we also refused to prevent the plaintiffs from recovering a component of non-pecuniary damages already delimited as compensatory under state law. Id. The proper approach, we decided, is to hold the loss compensable and to reduce the award if a state court would find it excessive. Id. at 674.[6] The Sixth Circuit has also refused to adopt the view that any award of damages in excess of a plaintiff's direct or out-of-pocket loss is punitive. In Kalavity, supra, the court held that under Ohio law an award of damages to a widow in a wrongful death action could not be reduced on the ground that she had remarried and received support from her new husband. It found "farfetched" the government's argument that this award did not compensate the plaintiff for an actual loss. The court recognized that damages are "punitive" only when "awarded separately for the sole purpose of punishing a tortfeasor who inflicted injuries 'maliciously or wantonly, and with circumstances of contumely or indignity.'" 584 F.2d at 811 n. 1 (quoting Milwaukee R.R. v. Arms, 1 Otto 489, 493, 91 U.S. 489, 493, 23 L.Ed. 374 (1875)).[7]

4. The plaintiffs concede that this reasoning is arithmetically incorrect. Assuming that a 1% discount rate is correct, the court's misapplication of that rate shortchanges the government by almost $1 million.

5. The decision whether to reopen the record, however, is left to the discretion of the trial judge. See Pfeiffer, 103 S.Ct. at 2558.

6. We noted that "punitive" and "excessive" have different meanings: the first term relates to an element of damages, while the second bears only upon the amount of an award. Felder, 543 F.2d at 674; see note 7 infra.

7. The court went on to note that

The purpose of ordinary tort damages, as distinguished from "punitive" damages, is both to compensate and to deter. Tort law mixes these two purposes, compensation and deterrence, when it awards ordinary damages. Tort law may award as customary damages something more than simply out-of-pocket loss, something for deterrence, without spilling over into "punitive" damages awarded solely for the purpose of punishment.... In excluding "punitive" damages from the coverage of the Tort Claims Act, we believe that Congress simply prohibited use of a retributive theory of punishment against the government, not a theory of damages which would exclude all customary damages awarded un-

 Under the law of Washington, awards are considered excessive only if the amount shocks the court's sense of justice or sound judgment. *See Harvey v. Wright,* 68 Wash.2d 205, 210, 412 P.2d 335, 337 (1966). The circumstances must indicate that the trial judge was swayed by passion or prejudice. We make this determination by comparing the sum to other awards in similar cases within the jurisdiction. *See, e.g., Power v. Union Pac. R.R. Co.,* 655 F.2d 1380, 1388 (9th Cir.1981) (diversity case based on Washington law).

 Reviewing a non-pecuniary award presents a "delicate and difficult question." *Felder,* 543 F.2d at 674. Each case stands on its own facts. This plaintiff's situation is most sympathetic. His injuries are multiple, grievous, and to a large extent, irreversible. Nevertheless, courts are required to maintain some degree of uniformity in cases involving similar losses. *Id.*

 The highest reported verdict in a case of medical malpractice in Washington is $1.1 million. *See Klink v. G.D. Searle & Co.,* 26 Wash.App. 951, 614 P.2d 701 (1980). In *Klink,* the doctor's negligence caused the plaintiff to suffer "a massive bilateral stroke." *Id.* 614 P.2d at 703. Moreover, the decision did not specify how the award was allocated between pecuniary and non-pecuniary damages. In *Glover for Cobb v. Tacoma General Hosp.,* 98 Wash.2d 708, 658 P.2d 1230 (1983), the court found reasonable a settlement of $575,000 received by a patient who had been rendered comatose by improper administration of an anesthetic. Once again the amount for each component of damages was not reported.

These cases, while not directly on point, provide substantial guidance. Unlike the

plaintiff in *Glover,* Scotty is not unconscious. There is evidence that he is capable of feeling, can perceive his environment, and is sensitive to auditory stimuli such as music. Based on a careful review of the facts, under the constraint of local law, we can only conclude that the size of Scotty's non-pecuniary award is excessive. We believe justice will be served by reducing this component of damages to $1 million. *See, e.g., Felder,* 543 F.2d at 676 (reducing non-pecuniary awards on appeal).

### B. *The Award to the Shaws*

 The district court awarded the Shaws $2 million pursuant to Revised Code of Washington Annotated (RCWA) section 4.24.010. This statute provides that, in an action by parents for injury to a child, compensation may be recovered for loss of the child's love and companionship, and injury to the parent-child relationship.[8] Each component is evaluated separately. Recovery for loss of companionship compensates the parents for the value of the child's mutual society and protection. *Hinzman,* 501 P.2d at 1231. Damages for destruction of the parent-child relationship are intended to alleviate parental grief, mental anguish, and suffering. *See Harbeson v. Parke-Davis, Inc.,* 98 Wash.2d 460, 656 P.2d 483, 492–93 (1983).[9]

The government contends that awards of $1 million on each ground are so large that, in combination with the other damages, they must be considered punitive. For reasons already stated, however, we reject the premise behind this argument. We find little reason to believe that a state will mischaracterize an element of damages as compensatory simply to enable plaintiffs suing under the FTCA to avoid the federal

---

der traditional tort law principles which mix theories of compensation and deterrence together.
*Kalavity,* 584 F.2d at 811 (footnote omitted).

**8.** RCWA section 4.24.010 also states that parents may recover the child's medical, hospital, and medication expenses, and any loss of his services and support. The Shaws were not eligible

for these items of damage, however, because the pecuniary award to their son already included them. *See Hinzman,* 501 P.2d at 1231.

**9.** Moreover, the period over which these losses are measured is not limited to the child's minority. *Balmer v. Dilley,* 81 Wash.2d 367, 502 P.2d 456 (1972).

bar against punitive awards. We will therefore examine damage awards based on RCWA section 4.24.010 under the Washington standard of excessiveness. *See, e.g., Clark v. Icicle Irrigation Dist.,* 72 Wash.2d 201, 432 P.2d 541, 545 (1967).

We recently had occasion to engage in such review. In *Power, supra,* a mother brought suit under RCWA 4.24.010 charging defendant railroad company with the death of her daughter. The district court found that the defendant's negligence caused the girl's death and awarded damages of $400,000. We reversed on the ground that "no court in Washington has awarded a figure *remotely approaching* [this amount]." 655 F.2d at 1388. (emphasis added). Our present research confirms that this statement remains accurate. *See, e.g., Hinzman, supra* ($16,500 award for death of child); *Clark, supra* ($15,000 award for death of child).

The Shaws are entitled to a just award for the mental anguish of raising a severely handicapped child. In contrast to the plaintiffs in *Hinzman* and *Clark,* however, their loss is not total. Scotty is able to respond, albeit on a very basic level, to both his mother and father. Moreover, the assistance of the full-time attendant provided for by the pecuniary award will enable the Shaws to keep Scotty at home. Because we firmly believe that a Washington court would consider this award "shocking," we will reduce it to $50,000.

REVERSED IN PART AND REMANDED IN PART.