**Michelle COLLEEN by her guardian Ad Litem Ronald Dearing, Ronald Dearing and Marcia Dearing, Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 86–4232.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1987.

Decided Dec. 30, 1987.

As Amended on Denial of Rehearing April 1, 1988.

Bruce H. Erickson, Spokane, Wash., for plaintiffs-appellees.

Jeffrey A. Clair, Washington, D.C., for defendant-appellant.

Before CANBY, REINHARDT and BEEZER, Circuit Judges.

CANBY, Circuit Judge:

Michelle Dearing and her parents sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2674, for negligent medical treatment at the time of Michelle's birth. The government contends that the Dearings' claim is barred by the statute of limitations and that the award of damages is excessive. We affirm in part, vacate in part, and remand for further proceedings.

## I FACTS AND PROCEEDINGS BELOW

On November 4, 1978, Michelle Dearing was born at Fairchild Air Force Base Hospital. It is undisputed that the hospital's negligence in failing to provide an anesthesiologist promptly and in performing the delivery, deprived Michelle of oxygen during birth and caused permanent brain damage. At trial the magistrate found, and the government does not dispute, that the delivering physician and the anesthesiologist told Mr. Dearing that they had delivered Michelle in time and that she was going to be fine.

Two hours after birth, Michelle began to have seizures and was transferred to Sacred Heart Medical Center. At Sacred Heart, the Dearings were told that the seizures were the result of Michelle's "rough birth." The Dearings were also told that Michelle's breathing had slowed, but that this was not a cause for alarm, and that Michelle might later be slow in reading or there might be absolutely nothing wrong. Michelle was released from Sacred Heart after sixteen days, with phenobarbital prescribed as a precaution against seizures. Michelle was seen periodically by a pediatrician thereafter. At no time were the Dearings told that Michelle had suffered brain damage or that she had been deprived of oxygen during birth. Michelle's medical records were not shown to the Dearings.

In September 1979, Michelle's pediatrician suggested that the Dearings have Michelle tested at a school for crippled children. In late September 1979, the Dearings were told that Michelle was developmentally disabled or handicapped. On July 9, 1981, the Dearings filed an administrative claim for medical malpractice. The Air Force rejected the claim on March 2, 1982, and the Dearings then filed suit.

The case was tried to a United States magistrate, who ruled that: (1) plaintiffs had filed an administrative claim within the two year statute of limitations governing FTCA actions; (2) plaintiffs' injuries were proximately caused by the defendant's negligent delay in summoning an anesthesiologist and in performing the caesarean delivery; and (3) plaintiffs suffered damages in the amount of approximately $4.5 million as a result of the government's negligence.

The government contends that: (1) the magistrate erred in ruling that plaintiffs filed their claim within the statutory period because reasonable inquiry would have revealed Michelle's injury and its cause more than two years before plaintiffs filed the claim; (2) the magistrate abused his discretion by using a zero percent discount rate to calculate the present value of plaintiffs' damages; and (3) the magistrate's award of $300,000 in nonpecuniary damages to Michelle's parents is excessive.

## II DISCUSSION

A. The statute of limitations

■ 28 U.S.C. § 2401(b) provides that "[a] tort claim against the United States shall be forever barred unless it is present-

ed in writing to the appropriate Federal agency within two years after such claim accrues." A medical malpractice claim does not accrue under the FTCA until the plaintiff discovers, or reasonably should have discovered, his injury and its causes. *See In re Swine Flu Prods. Liab. Litig.,* 764 F.2d 637, 639 (9th Cir.1985). The date the Dearings first discovered the existence and cause of Michelle's injuries is a question of fact reviewed under the clearly erroneous standard. *See United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The date the Dearings reasonably should have discovered the existence and cause of Michelle's injuries is a mixed question of fact and law. Because, like negligence, this question requires a court "to determine, by reference to the 'data of practical human experience,' [citation omitted] whether an individual acted 'reasonably' by community standards," *McConney,* 728 F.2d at 1204, we review the magistrate's findings under the clearly erroneous standard.

The magistrate found that the Dearings actually discovered and reasonably should have discovered Michelle's injury and its cause "no earlier than September 1979, a time well within the two year period before the administrative claim was filed on July 9, 1981." The government does not dispute the magistrate's finding that the Dearings did not learn of Michelle's brain injury until September 1979. The government argues instead that the Dearings reasonably should have discovered Michelle's injury and its cause at some earlier date, and that plaintiffs' claim is therefore barred by the statute of limitations.

We disagree. Prior to September 1979, the Dearings had only three signs that Michelle might be injured and that the government was responsible: the difficulty of the birth itself, the seizures shortly after birth, and Michelle's crossed eyes. In light of the government doctors' assurances after Michelle's birth and after her treatment for seizures, we cannot say that the Dearings clearly should have known before Michelle was tested in September 1979 that Michelle was injured and that the govern-

ment was responsible. We therefore affirm the magistrate's ruling that plaintiffs' claim is timely under the FTCA.

### B. The magistrate's choice of a discount rate

"[A]wards based on income streams spread over time are usually discounted to present value to account for the fact that a plaintiff, by receiving the money in a lump sum, 'up front,' will invest the sum and earn additional income from the investment." *Trevino v. United States,* 804 F.2d 1512, 1517 (9th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987). The present value of a lump sum award may be determined (1) by calculating the difference between the market rate of interest and the anticipated rate of inflation and then discounting by this real interest rate; (2) by including the effects of inflation and discounting by the market interest rate; and (3) by employing a zero discount rate (the total offset approach). *Trevino,* 804 F.2d at 1519; *see also Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 541–46, 103 S.Ct. 2541, 2552–55, 76 L.Ed.2d 768 (1983). The Supreme Court has said that the total offset approach is unacceptable as a uniform method to calculate present value, although it may be stipulated to by the parties or applied by the trial court in an appropriate case. *See Jones & Laughlin,* 462 U.S. at 550–51, 103 S.Ct. at 2557–58. Regardless of the method of calculation, the anticipated rate of return and the inflation rate "must be independently established by competent evidence." *Alma v. Manufacturers Hanover Trust Co.,* 684 F.2d 622, 626 (9th Cir.1982).

We review the choice of a discount rate for abuse of discretion. *Trevino,* 804 F.2d at 1515.

In the present case, the magistrate rejected both the Dearings' predicted discount rate of $-2\%$ and the government's predicted discount rate of $+3.25\%$ and concluded "that the most reasoned prediction lies between the theories of the parties— that inflation and interest rates will average in the 5–5½% range in the years of

Michelle's life, and will be substantially equivalent." The government argues that the magistrate's zero percent discount rate constitutes an abuse of discretion.

We agree. In *Trevino*, we stated that a trial court may adopt a discount rate above 3% or below 1% if such a rate is "[s]upported by credible expert testimony." 804 F.2d at 1519.[1] In the present case, we can find no expert testimony in the record to support the magistrate's estimate of a 5–5½% average interest rate during Michelle Dearing's lifetime or his conclusion that inflation and interest rates will be substantially equivalent. While we recognize that a judge need not "embark on a search for 'delusive exactness,' " *Jones & Laughlin*, 462 U.S. at 552, 103 S.Ct. at 2558, under *Trevino* he may not choose a zero percent discount rate simply because it is midway between the figures offered by the parties. Nor may he assume, without evidence, that inflation and interest rates will balance each other out during Michelle Dearing's seventy-year life expectancy.

■ Because the magistrate's choice of a zero percent discount rate is unsupported by credible expert testimony, we must remand for new proceedings on this issue. The magistrate is instructed to review the record, to take additional evidence if necessary, and to recalculate the discount rate. In recalculating the discount rate, the magistrate should rely on credible expert testimony to determine the rate of interest that would be earned on a mix of short, medium, and possibly long-term investments.[2] Because there is credible expert testimony in the record to support the magistrate's choice of a 5–5½% inflation rate, the magistrate may use this figure in calculating a new discount rate. Finally, we find no error in the magistrate's use of tax free bonds in calculating the discount rate. Although we said in *Trevino* that the use of tax free securities to arrive at a discount rate is "suspect," 804 F.2d at 1520, in the present case the magistrate found that "the presented difference between income from taxable and tax free bonds is so small as to be clearly less than the income tax on the taxable bonds." This finding is not clearly erroneous.

## C. The award to Michelle's parents

Washington law permits the parents of an injured child to recover for two types of non-pecuniary injury: (1) loss of the child's love and companionship; and (2) injury to the parent-child relationship. *See* Wash. Rev.Code Ann. § 4.24.010 (1987); *Shaw v. United States*, 741 F.2d 1202, 1209 (9th Cir.1984). The government contends that the magistrate's award in the present case of $150,000 for loss of the child's companionship and $150,000 for damage to the parent-child relationship is excessive.

We review damage awards in FTCA cases for clear error. *Shaw*, 741 F.2d at 1205. "To determine whether a given award is excessive, we look to the relevant state's case law on excessive awards." *Trevino*, 804 F.2d at 1515. Washington considers awards excessive "only if the amount shocks the court's sense of justice or sound judgment" and if it appears that "the trial judge was swayed by passion or prejudice." *Shaw*, 741 F.2d at 1209.

In *Shaw*, we held that a district court's award of two million dollars in nonpecuniary damages was excessive.

1. We held in *Trevino* that the district court abused its discretion in applying a negative discount rate to a tort award because the negative rate was derived from analysis of an unrepresentative timespan:

   We do not hold … that any discount rate above 3% or below 1% is impermissible. Supported by credible expert testimony, a court could certainly adopt a different rate. [citation omitted] We do hold, however, that it is impermissible to select a time period over which to compare inflation and interest rates that provides a decidedly aberrational result.

   804 F.2d at 1519.

2. We note that the discount rate "should be based on the rate of interest that would be earned on 'the best and safest investments.' " *Jones & Laughlin*, 462 U.S. at 537, 103 S.Ct. at 2550–51. Michelle "is entitled to a risk-free stream of future income to replace [her] lost wages; therefore, the discount rate should not reflect the market's premium for investors who are willing to accept some risk of default." *Id.*

The Shaws are entitled to a just award for the mental anguish of raising a severely handicapped child. In contrast to the plaintiffs in *Hinzman* [*v. Palmanteer,* 81 Wash.2d 327, 501 P.2d 1228] and *Clark,* [*v. Icicle Irrigation Dist.,* 72 Wash.2d 201, 432 P.2d 541] however, their loss is not total. Scotty is able to respond, albeit on a very basic level, to both his mother and father. Moreover, the assistance of the full-time attendant provided for by the pecuniary award will enable the Shaws to keep Scotty at home. Because we firmly believe that a Washington court would consider this award "shocking," we will reduce it to $50,000. 741 F.2d at 1210. In *Trevino,* we acknowledged that "damage awards may have risen dramatically" in the three years since the *Shaw* decision, but we found that Sophia Trevino's parents would "be able to enjoy her company to a far greater degree than would Scotty Shaw's parents." 804 F.2d at 1516. We therefore reduced a nonpecuniary damages award from a total of $400,000 to a total of $100,000.

■ In the present case, it seems clear that Michelle Dearing is more severely injured than the plaintiff in *Trevino*. The magistrate found that Michelle Dearing when mature is likely to read at a first-grade level and to be unable to write, unable to walk, and unable "to be free of assistance and supervision." *Cf. Trevino,* 804 F.2d at 1514. We conclude that the magistrate's award of $300,000 in non pecuniary damages to Michelle Dearing's parents would not shock a Washington court's sense of justice or sound judgment, and we therefore affirm the award.

### CONCLUSION

We affirm the magistrate's ruling that plaintiffs filed their claim in a timely fashion. We also affirm the award of $300,000 in nonpecuniary damages to Michelle Dearing's parents. We vacate the award of damages based on the zero discount rate,

and remand for recalculation of a discount rate in accordance with Part II.B of this opinion.[3]

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

---

**3.** Pursuant to Fed.R.App.P. 37, we instruct that interest is to be awarded on the entire judgment in favor of Michelle Dearing, as recalculated by the district court on remand, from November 21, 1986. Interest is also to be awarded on the entire judgment in favor of Michelle's parents from November 21, 1986. 31 U.S.C. § 1304(b)(1)(A) (1982).