[No. 23780-6-II.    Division Two.    March 3, 2000.]

CHRISTINA NIELSON, *Appellant*, v. EISENHOWER & CARLSON,
ET AL., *Respondents*.

*Carl A. Taylor Lopez* of *Lopez & Fantel, P.S.*, for appellant.

*Stephania Camp Denton* and *Bruce Winchell* of *Mills Meyers Swartling*, for respondents.

BRIDGEWATER, C.J. — Brad and Stacey Nielson, on behalf of their daughter Christina Nielson, appeal a summary judgment dismissal of their legal malpractice claim against Ronald A. Roberts and his law firm, Eisenhower & Carlson. The malpractice suit was based upon the Nielsons' settlement in an underlying federal claim against the government for 85 percent of the verdict to avoid the risk of appeal by the government based upon a claimed failure to file within the statute of limitations. We hold that the

test to be applied in legal malpractice cases is a "but for" test, using traditional principles of proximate cause; that is, but for the negligence of the lawyer, would the case have been successful. Because the test here involved an analysis of appellate procedure as to whether an appeal by the government would have been successful based upon failure to file within the statute of limitations, a judge, not a jury, appropriately decided the issue. As well, our review is whether the Ninth Circuit, using the "clearly erroneous test," would have affirmed the trial court's finding that the matter was filed within the statute of limitations. We hold that the Ninth Circuit would have affirmed the trial court's findings. Thus, the erroneous advice about the length of the statute of limitations was not the proximate cause of the settlement of less than the full amount of the verdict in federal district court against Madigan Hospital. We affirm.

Christina Nielson was born on July 21, 1989, at Madigan Army Medical Center.[1] The personnel at Madigan failed to properly and timely assess and treat Christina. These delays at Madigan were a departure from the applicable standard of care and caused Christina to suffer permanent brain damage. Early on, the concern was over damage done to Christina's heart; her parents were not aware of any brain injury.

Following a heart surgery, Christina was diagnosed as probably having DiGeorges syndrome, a genetic condition that could affect the brain and immune system. The doctor prescribed phenobarbital for this seizure disorder. The doctor told Mr. Nielson that it was not possible to determine whether she had neurological problems until she was older and could be tested.

The doctors did not rule out DiGeorges syndrome until February 1990. In April 1990, when Christina was nine months old, she had a second heart surgery. At this time, Mr. Nielson asked if she had a brain injury. The doctor

---

[1]These district court findings of fact by Judge Dwyer are from the underlying bifurcated medical malpractice case, *Nielson v. United States.*

responded it was too early to tell and that she could not be tested or evaluated until she was older.

In May 1990, when Christina was 10 months old, doctors performed an EEG and told the Nielsons that Christina's brain was normal and that she could be taken off phenobarbital.

Dr. Herndon reassessed Christina in October 1990, and for the first time, a doctor diagnosed her with a brain injury. In a letter to the Nielsons, Dr. Herndon stated that Christina had suffered significant neurological deficits secondary to cardiogenic shock in her first week of life. This was the first time that anyone had told the Nielsons that Christina had neurological deficits and that these deficits were caused by cardiogenic shock during the first week of Christina's life.

In September 1989, the Nielsons briefly discussed the treatment Christina had received at Madigan with Roberts while he was representing them in an unrelated automobile accident claim. Subsequently, Roberts advised the Nielsons in two letters that the statute of limitations was three years. In fact, the applicable statute of limitations under the Federal Tort Claims Act is two years because Madigan Army Hospital is an agency of the United States, which can be sued only under the Federal Tort Claims Act. 28 U.S.C. § 2401(b).

The Nielsons met with another attorney in the fall of 1991 and filed a claim on Christina's behalf against Madigan on November 14, 1991, under the Federal Tort Claims Act. The Nielsons filed their claim within two years of the diagnosis of brain damage but more than two years from the time of Christina's birth.

In the federal district court, the government filed a summary judgment motion asserting that the two-year statute of limitations barred the action. A bifurcated trial took place before Judge Dwyer. The first phase dealt with the statute of limitations issue. Judge Dwyer held that the Nielsons filed their claim within the two-year period required by the Federal Tort Claims Act. Judge Dwyer

specifically stated that Christina's brain injury was the only physical injury for which the Nielsons sought damages. Judge Dwyer found that the claim did not accrue until the parents discovered the brain injury and its cause in October 1990. Judge Dwyer further noted that this was a subtle injury, difficult to detect except over time as the child developed. Then, Judge Dwyer heard a trial on the merits, found Madigan negligent, and awarded $3,333,202 to the Nielsons.

The government appealed on the issue of the statute of limitations. The Nielsons cross-appealed for the damages that the trial court did not award. While the appeal was pending, the Nielsons accepted $2,850,000 in settlement of the case or 85.5 percent of the judgment awarded by the district court. The Nielsons and Mr. Dussault, Christina's guardian ad litem, explained that they settled because of the risk of reversal on appeal and to obtain the money right away.

On August 2, 1996, the Nielsons brought this malpractice action in state court against Roberts and his firm to recover for two categories of damages (1) the difference between the $3,333,202 judgment awarded at trial in the underlying *Nielson v. United States* case and the settlement amount of $2,850,000 ($483,202); and (2) the amount of damages that were not awarded by the trial court and were the subject of the Nielsons' cross-appeal against the government ($6,102,183).

Roberts and Eisenhower & Carlson moved for summary judgment. Judge M. Karlynn Haberly granted the summary judgment motion on the basis that the Nielsons "failed to make a prima facie showing of evidence on the element of proximate cause, sufficient to raise a genuine issue of disputed material fact." Judge Haberly denied the Nielsons' motion for reconsideration on August 19, 1998.

## A. Standard of Review

■ ■ When reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial

court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wilson*, 98 Wn.2d at 437. The court should grant the motion only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson*, 98 Wn.2d at 437. The issue of proximate cause is reviewable on appeal as a question of law if all inferences from the evidence are incapable of reasonable doubt. *City of Seattle v. Blume*, 134 Wn.2d 243, 252, 947 P.2d 223 (1997).

## B. Legal Malpractice

■ Liability for legal malpractice requires proof of four elements: (1) the existence of an attorney-client relationship giving rise to a duty of care on the part of the lawyer; (2) an act or omission breaching that duty; (3) damage to the client; and (4) the breach of duty must have been a proximate cause of the damages to the client. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992).

Roberts argues that even if he was negligent, his negligence was not the proximate cause of the Nielsons' loss. Thus, at issue in this case is the final element of proximate cause. The parties dispute how to determine whether Roberts' negligence was a proximate cause of the Nielsons' loss in the unfavorable settlement. Roberts argues that proximate cause exists only if the Nielsons show they would have lost on appeal due to Roberts' incorrect advice. In contrast, the Nielsons argue that since the independent business judgment rule has been rejected in *Blume*, 134 Wn.2d 243, they need to show only that

Roberts' incorrect advice was one of the causes of the unfavorable settlement.

### 1. *Independent Business Judgment Rule*

■ Before 1997, some Washington courts followed the independent business judgment rule. *See Marsh v. Commonwealth Land Title Ins. Co.*, 57 Wn. App. 610, 622-24, 789 P.2d 792, *review denied*, 115 Wn.2d 1025 (1990); *see also King v. City of Seattle*, 84 Wn.2d 239, 250-51, 525 P.2d 228 (1974). According to this rule, "if a plaintiff, by the exercise of independent business judgment, elects not to pursue available legal remedies, the wrongful act of the defendant is not the proximate cause of the plaintiff's damages." *Blume*, 134 Wn.2d at 251. But the Washington Supreme Court in *Blume* rejected the independent business judgment rule and held that it "can no longer serve as a bar to the proximate cause element of a legal claim." *Blume*, 134 Wn.2d at 260. Specifically troubling to the court was that "[e]very time a party settles a claim, he or she is essentially making an independent business judgment which under the present rule would preclude any valid claim against a tortfeasor. Consequently, the rule promotes litigation and favors those with the means to do so." *Blume*, 134 Wn.2d at 259. In rejecting the independent business judgment rule, the court relied "instead on traditional principles of proximate causation to determine whether the defendant is responsible for the injuries and damages suffered." *Blume*, 134 Wn.2d at 252.

Thus, according to *Blume*, although the Nielsons settled their case instead of defending it on appeal, the independent business judgment rule did not automatically bar them from showing proximate cause. When the trial court dismissed the Nielsons' claim on summary judgment, it was aware that the Supreme Court had rejected this rule in *Blume*. The trial court dismissed this case on summary judgment based on traditional principles of proximate cause.

Thusly, the independent business judgment rule does not

bar the Nielsons' legal malpractice claim against Roberts. But the unavailability of the independent business judgment rule does not assist the Nielsons in establishing the causation element of their malpractice claim. Therefore, to defeat summary judgment the Nielsons must still establish that Roberts' incorrect advice proximately caused their loss in the unfavorable settlement based on traditional principles of proximate cause.

## 2. *Proximate Cause Standard*

Proximate cause consists of two elements: cause in fact and legal causation. *Blume*, 134 Wn.2d at 251. "Cause in fact refers to the 'but for' consequences of an act, that is, the immediate connection between an act and an injury." *Blume*, 134 Wn.2d at 251-52. "The 'but for' test requires a plaintiff to establish that the act complained of probably caused the subsequent disability." *Daugert v. Pappas*, 104 Wn.2d 254, 260, 704 P.2d 600 (1985). "Legal causation rests on policy considerations determining how far the consequences of a defendant's act should extend. It involves the question of whether liability should attach as a matter of law, even if the proof establishes cause in fact." *Blume*, 134 Wn.2d at 252.

Courts have consistently applied the "but for" test in legal malpractice cases. *Daugert*, 104 Wn.2d at 260. In *Daugert*, the court analyzed alternative tests for legal malpractice claims such as the loss of chance test and the substantial factor test. *Daugert*, 104 Wn.2d at 261-62. The court concluded that these other tests were inappropriate and that the "but for" standard applies in attorney malpractice cases. The court found the "better approach is to retain the 'but for' test" in attorney malpractice cases where one must "establish that the act complained of more likely than not caused the subsequent disability." *Daugert*, 104 Wn.2d at 263. The court also noted that in an ordinary malpractice action "when an attorney makes an error during a trial . . . [t]he trial court hearing the malpractice claim merely retries, or tries for the first time, the client's

cause of action which the client asserts was lost or compromised by the attorney's negligence, and the trier of fact decides whether the client would have fared better but for such mishandling." *Daugert*, 104 Wn.2d at 257. The court further held that when the attorney malpractice involves a failure to perfect an appeal, the burden of proving causation takes on a different light. *Daugert*, 104 Wn.2d at 258. The cause in fact inquiry becomes whether the client would have been successful if the attorney had timely filed the appeal. Specifically, the client must show that an appellate court would have granted review and rendered a judgment more favorable to the client. *Daugert*, 104 Wn.2d at 258.

The Nielsons argue that *Daugert* is limited to malpractice claims that involve a failure to perfect appeal. While the Nielsons are correct in stating that *Daugert* did address the failure of an attorney to timely file an appeal, *Daugert's* reasoning is equally applicable to other attorney actions or omissions. Thus, under *Daugert*, the Nielsons must prove that if the case had gone to the Ninth Circuit on appeal, but for Roberts' negligence, the Nielsons would have received a more favorable judgment. That is, would the Court of Appeals for the Ninth Circuit have affirmed the district court's finding that the Nielsons did not learn of Christina's brain injury until 15 months after her birth.

Other Washington cases support the "but for" test for proximate cause in attorney malpractice cases. *See Mastro v. Kumakichi Corp.*, 90 Wn. App. 157, 168, 951 P.2d 817, *review denied*, 136 Wn.2d 1015 (1998) (court noted that plaintiff would not have prevailed if it continued with its litigation). One court applied the "but for" standard in a malpractice case by stating that the issue was whether the client would have prevailed or achieved a better result if her attorney had performed competently. *Sherry v. Diercks*, 29 Wn. App. 433, 437-38, 628 P.2d 1336, *review denied*, 96 Wn.2d 1003 (1981).

The Nielsons argue for a different test to show proximate cause. They argue that the test should be subjective and a

jury should determine whether the settlement was reasonable. They contend that according to *Blume* they have established proximate cause merely by showing that "one of the causes of settlement for less than the judgment was risk of the United States statute of limitations appeal." (Appellant's Reply Br. at 9.) While the Nielsons rightly point to *Blume* as an authoritative rejection of the independent business judgment rule as a bar to proximate cause, they misinterpret *Blume* and submit a new test that is not supported by authority.[2]

After *Blume* rejected the independent business judgment rule, the court stated:

> We are not saying, as a matter of law, that a person's own conduct may not be the sole cause of his or her injuries, thus breaking the chain of causation. The court must decide based on traditional principles of proximate causation whether or not a defendant was the cause of the injuries suffered and whether the duty to mitigate was met.

*Blume*, 134 Wn.2d at 260. *Blume* did not create a new test; it instead clarified the holding of the court. When the court stated that a person's own conduct may be the sole cause of injuries, the court was illustrating one way that a defendant may break the chain of causation. The Nielsons misinterpret *Blume* by arguing that this is the only way to break the chain of causation. On the contrary, showing the plaintiff is the sole cause of his or her injury is one of several ways to break the chain of causation. The court in *Blume* specifically stated that traditional proximate cause principles apply. And the court outlined traditional proximate cause stating that it consisted of cause in fact,

---

[2]The Nielsons also argue in their reply brief that *"Blume* makes it clear an action complicated by attorney malpractice can be settled prior to trial, *even if the trial probably would have been successful,* without losing the right to sue the negligent attorney for damages caused by the malpractice." (Emphasis added.) While the Nielsons are correct that *Blume* holds that such a claim cannot be barred, *Blume* does not hold that courts cannot or should not evaluate the element of proximate cause by determining if a trial probably would have been successful. Furthermore, contrary to the Nielsons' assertions, *Blume* nowhere "contemplates and approves settlements prior to trial even where success at trial is probable . . . ."

including the "but for" test, and legal causation. *Blume*, 134 Wn.2d at 251-52. Furthermore, the court in *Blume* gave no indications that it intended to create a new proximate cause test. Consequently, there is no support for the test the Nielsons provide.[3]

■ Thus, we apply the "but for" proximate cause standard, which requires the Nielsons to show that they would have prevailed or achieved a better result on appeal but for Roberts' negligence.

Before turning to federal law and how the Ninth Circuit would have ruled on the statute of limitations question, we address why this proximate cause determination is a question of law that this court can decide and not a question of fact.

"While questions of negligence and proximate causation are usually questions for the jury, the unique characteristics of a legal malpractice action may, under some circumstances, make that general rule inapplicable." *Brust v. Newton*, 70 Wn. App. 286, 290, 852 P.2d 1092 (1993) (citations omitted), *review denied*, 123 Wn.2d 1010 (1994). "[T]he line between questions for the judge and those for the jury in legal malpractice actions has generally been drawn between questions of law and questions of fact." *Brust*, 70 Wn. App. at 290-91 (citations omitted).

■ Here, "[b]ecause the questions of whether an appellate court would have granted review and, if so, whether its ruling would have been favorable to the appellant necessarily involved analysis of the relevant law and the Rules of Appellate Procedure," the proximate cause issue in this case requires special expertise and is therefore a question of law for the court. *Brust*, 70 Wn. App. at 291-92 (citing *Daugert*, 104 Wn.2d at 258-59).

---

[3]In addition, the "but for" test is more objective than the test the Nielsons propose. Although the record reflects that Mr. Nielson and Mr. Dussault perceived that a risk existed of losing the statute of limitations argument on appeal, this is a subjective perception of a vulnerable legal position and a risk of reversal. The "but for" standard, which examines whether a client would have received a more favorable judgment in court but for the attorney's negligence, provides a more objective test.

For the above reasons, we follow the "but for" standard in *Daugert* to determine whether the Nielsons would have achieved a better result on appeal but for Roberts' negligence.

### 3. *Federal Tort Claims Act and Statute of Limitations*

We first decide whether the Ninth Circuit would have reversed or affirmed the Nielsons' appeal. If the Ninth Circuit would have affirmed, then Roberts' negligence did not create a vulnerable legal position where the Nielsons faced reversal, and his negligence was not the proximate cause of their loss.

■ The Ninth Circuit would reverse the district court's findings only if the Ninth Circuit found that it was clearly erroneous. *Colleen v. United States*, 843 F.2d 329, 331 (9th . Cir. 1987). A finding is clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson*, 470 U.S. at 573-74.

The Federal Tort Claims Act provides that a tort claim against the federal government must be presented to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). In this case, the Nielsons filed their claim within two years of the diagnosis of brain damage but more than two years from the time of

Christina's birth.[4] Thus, the dispositive issue is when did the claim accrue.

In medical malpractice actions under the Federal Tort Claims Act, the United States Supreme Court has held that a claim does not accrue until a plaintiff discovers both the injury and its cause. *United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352, 62 L.. Ed. 2d 259 (1979). The Supreme Court stated that injury "in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." *Kubrick*, 444 U.S. at 122. The Ninth Circuit has held that this is an objective standard, stating the "action accrues and the statute of limitation starts to run when a 'plaintiff has discovered, or in the exercise of reasonable diligence should have discovered, both the injury and its cause.' " *Herrera-Diaz v. United States*, 845 F.2d 1534, 1537 (9th Cir. 1988) (quoting *Davis v. United States*, 642 F.2d 328, 331 (9th Cir. 1981), *cert. denied*, 455 U.S. 919 (1982).

The Ninth Circuit has had several occasions to apply this standard in medical malpractice cases where an infant was injured near birth but the injury and its physical cause manifested later. This case is squarely on point with *Colleen v. United States*, 843 F.2d 329 (9th Cir. 1987). In *Colleen*, because of alleged negligence, the infant was deprived of oxygen at birth. She suffered permanent brain damage. The infant began to experience seizures almost immediately after being born. She was transferred to another hospital and given phenobarbital as a precaution against seizures. The doctors told her parents that their child might later be slow in reading or there might be absolutely nothing wrong. *Colleen*, 843 F.2d at 330. Ten months later, she was tested and found to be brain damaged. The parents filed a claim on her behalf less than two years after that diagnosis, but more than two years from the time of her birth. The Ninth

---

[4]Christina Nielson was born on July 21, 1989. A doctor diagnosed and told the Nielsons of Christina's brain injury and its cause in October 1990. The Nielsons filed their malpractice claim on November 14, 1991.

Circuit affirmed the trial court's decision that the claim was within the statute of limitations. The Ninth Circuit held that in light of the doctors' assurances and after her treatment for seizures, the court could not say that the parents clearly should have known that she was injured and that the government was responsible. *Colleen*, 843 F.2d at 331.

*Colleen* shows that the Ninth Circuit would not have reversed the district court's statute of limitation findings. In this case, there is a substantial amount of evidence to support the district court's findings that the Nielsons did not know and could not have known about the brain injury and its cause until October 1990. It is undisputed that the Nielsons did not have actual knowledge of Christina's brain injury until they received the letter from Dr. Herndon. The letter stated that Christina had suffered significant neurological deficits secondary to cardiogenic shock in her first week of life.

In addition, the facts do not show that the Nielsons should have known that Christina had a brain injury. Doctors repeatedly told the Nielsons that they could not determine if Christina had neurological problems until she was older and could be tested. Furthermore, the doctors told the Nielsons that Christina may have DiGeorges syndrome, a genetic condition. Later, an EEG revealed that Christina's brain was functioning normally. At this point, the Nielsons thought their daughter was normal and were unaware of any brain damage. The Nielsons explained that they thought their daughter was normal because two operations had cured her heart defect, the doctors had discounted DiGeorge's Syndrome, and the doctors had told them that an EEG revealed that Christina's brain was normal. According to *Colleen*, under these circumstances, where the doctors could not diagnose Christina's brain damage or its cause until 1990, the facts support the finding that the Nielsons should not have known of the injury and its cause at least until the doctors did in 1990.

Several other Ninth Circuit cases lead to the same result.

*See, e.g., Rosales v. United States*, 824 F.2d 799 (9th Cir. 1987) (statute of limitations did not start to run until doctors diagnosed both the injury of retardation and its cause); *Herrera-Diaz v. United States*, 845 F.2d 1534 (9th Cir. 1988) (once the doctors diagnosed the child's brain damage and cerebral palsy and told mother of the cause, a lack of oxygen near birth, the court held the statute of limitations started to run); *Fernandez v. United States*, 673 F.2d 269 (9th Cir. 1982) (parents of child held to know of injury and its cause when parents were aware of child's deafness and its cause, jaundice).

The Nielsons cite *Arvayo v. United States*, 766 F.2d 1416 (10th Cir. 1985), and state that the Ninth Circuit could find that the statute of limitations bars the Nielsons' claim. In *Arvayo*, the parents brought a negligence action against the government for their child's brain damage near birth. The court held that a reasonable parent would have made some type of inquiry and should have discovered the injury and its cause earlier.

As the Ninth Circuit has noted in *Rosales, Arvayo* is distinguishable from cases like the present one, where the parents are not required to make an inquiry because the doctors could not have diagnosed the injury. *Rosales*, 824 F.2d at 805. In *Arvayo*, the parents knew of the injury, brain damage, and of the medical cause, bacterial meningitis. This knowledge of the injury and its cause started the statute of limitations to run. In *Rosales*, neither the parents nor the doctors knew of the probable general medical cause until much later. Here, as in *Rosales* and *Herrera-Diaz*, the district court found that the statute of limitations did not begin to run until the doctors diagnosed Christina's injury, brain damage, and its cause, a lack of oxygen at birth instead of DiGeorges syndrome, a genetic disease. Thus, following its own precedent, the Ninth Circuit would not have found that the Nielsons' claim accrued any earlier than when the doctors diagnosed Christina's specific injury and its cause.

It is evident from the record that a substantial amount

of evidence supported the district court's findings. Moreover, any holding to the contrary would require the parents to recognize the brain injury before the doctors, which would be an unreasonable burden to impose. There is no evidence that the parents recognized and knew of the brain injury before the doctors. Therefore, because this court, in light of the entire record, is not left with a definite or firm conviction that the district court committed a mistake, we hold that the Ninth Circuit would not conclude that the district court's finding were clearly erroneous.

Accordingly, we hold that on appeal the Ninth Circuit would have found that the Nielsons' underlying claim was clearly within the two-year statute of limitations. Because the Nielsons would have won on appeal with or without Roberts' negligence, we hold that Roberts' negligence was not a "but for" cause of the Nielsons' loss. Consequently, as a matter of law, there is no proximate cause and the trial court properly dismissed the Nielsons' malpractice claim on summary judgment. Because the trial court's order of summary judgment was proper, it is unnecessary to reach the alternative argument of collateral estoppel, and our holding is dispositive as to both of the Nielsons' claims for damages.

MORGAN and ARMSTRONG, JJ., concur.

Review denied at 141 Wn.2d 1016 (2000).